IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JONATHAN AVERY, *on behalf of himself and all others similarly situated.*<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL CONGRESS OF EMPLOYERS, INC. AND BENEFYTT TECHNOLOGIES, INC.,<br><br>Defendants. | **Civil Action No.**<br><br>3:22-cv-01224<br><br>**Jury Trial Demanded** |

# CLASS ACTION COMPLAINT

Plaintiff, JONATHAN AVERY ("Plaintiff", "Mr. Avery" or "Avery"), individually and on behalf of all other similarly situated, and demanding a trial by jury, brings this action against Defendants, NATIONAL CONGRESS OF EMPLOYERS, INC. (hereinafter "NCE") and BENEFYTT TECHNOLOGIES, INC. (hereinafter "Benefytt") (hereinafter collectively referred to as "Defendants") for violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227, *et seq*. In support of this Complaint, Plaintiff, individually, and on behalf of all others similarly situated asserts as follows:

## BACKGROUND: TELEMARKETING AND THE TCPA

1. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

2. The TCPA also affords special protections for people who registered their phone numbers on the National Do Not Call Registry and nonetheless received telemarketing calls for which they did not expressly consent..

3. In 2019, the FTC received over 5.4 million complaints from US residents about unwanted calls. FTC: *What Do Not Call Complaints are telling* us (Oct. 17, 2019), *available* at: https://www.consumer.ftc.gov/blog/2019/10/what-do-not-call-complaints-are-telling-us.

4. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, (March 28, 2019) available at: https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**THE PARTIES**

5. Plaintiff and putative class-representative, Jonathan Avery is a natural person and adult, who at all times relevant hereto, resided in Royse City, Texas 75189.

6. Defendant NCE is an insurance provider which solicits, *inter alia*, health insurance to consumers.

7. NCE maintains its headquarters at 1000 North West Street, Suite 1200, Wilmington, Delaware 19801.

8. Defendant Benefytt is a technology company that markets and administers insurances services.

9. Benefytt maintains its headquarters at 3450 Buschwood Park Drive, Tampa Florida 33618.

10. Plaintiff brings this Action in his individual capacity and on behalf of all other similarly situated seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants, in negligently, knowingly, and/or willfully contacting Plaintiff and other Class member on their cellular telephone in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227, *et seq*. and related regulations, specifically the National Do-Not-Call provisions where the telephone number provided to Defendant was registered on the National Do-Not-Call list.

## JURISDICTION AND VENUE

11. This Court has original subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. Furthermore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000.00, exclusive of interest and costs.

13. This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in the State of Texas.

14. Furthermore, Defendant Benefytt, acting at the direction of Defendant NCE, placed phone calls to Plaintiff at his "469" area code, associated with the Dallas, Texas region.

15. Defendant Benefytt also placed calls from a number which appeared on Plaintiff's caller ID to be from the "469" area code.

16. Plaintiff resided within this District at all times relevant hereto. Plaintiff received the calls at issue and experienced the associated harm within this District.

17. A substantial portion of the acts and omissions described herein occurred within this District.

18. Accordingly, personal jurisdiction exists and venue is proper pursuant to 28 U.S.C. §1391 (b)(2).

### FACTS PERTAINING TO PLAINTIFF

19. At all times relevant hereto, Plaintiff, Jonathan Avery, was the owner of a cellular phone, the number for which was (469) XXX-3933.

20. Plaintiff's phone was primarily used for residential purposes.

21. Plaintiff registered this telephone number on the National Do-Not-Call list on or around May 18, 2020.

22. Mr. Avery registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

23. Mr. Avery did not consent to being contact by Defendants.

24. Upon information and belief, on or around October 28, 2020 Defendant Benefytt began to contact Mr. Avery on a repetitive and continuous basis for the purpose of soliciting health insurance on behalf of Defendant NCE.

25. Defendants' phone calls to Mr. Avery utilized an automatically generated and/or pre-recorded voice.

26. For instance, when Plaintiff answered the phone, he was greeted not by a live agent, but by an automated questionnaire regarding Plaintiff's personal information.

27. Defendant placed at least 5 calls to Plaintiff's telephone soliciting health insurance for NCE.

28. A non-exhaustive list of the offending phone calls placed to Plaintiff' is below:

| Date: | Caller ID: |
|---|---|
| October 28, 2020 3:49 pm | 469-707-5143 |
| November 4, 2020 10:33 am | 469-707-8154 |
| November 11, 2020 10:41 am | 469-707-2871 |
| December 8, 2020 9:39 am | 469-707-6234 |
| December 9, 2020 9:26 am | 469-707-6915 |

29. Plaintiff did not request information from either of Defendants regarding health insurance prior to the campaign of calls.

30. Defendants' telephone calls were not made for "emergency purposes" but rather were to solicit health insurance.

31. Plaintiff found Defendants' repeated calls annoying, frustrating, upsetting, harassing, and an invasion of his privacy.

32. The calls from Defendants were precisely the type of communications Mr. Avery sought to avoid when he registered his number on the Do Not Call registry.

33. Defendants' text messages intruded upon the right of Plaintiff and the putative class members to be free from invasion of their seclusion.

**Direct and Vicarious Liability**

34. To the extent Defendants outsource their illegal robocalling to various agents, call centers and vendors, Defendants are still liable for calls that violate the TCPA.

35. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

36. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

37. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

38. Defendant NCE hired, permitted, and enjoyed the benefits of agents, call centers and vendors, such as Benefytt's mass robocalling.

39. Defendant NCE acted as the principal and Benefytt acted as its agent.

40. NCE is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from unlawful robocalls made by agents, call centers and vendors.

41. Because the calls at issue were made by Benefytt, at the direction of NCE, Benefytt is directly liable and NCE is vicariously liable.

**Class Allegations**

42. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. commonality, typicality, and adequacy of representation.

43. Defendants lack policies in place to assure that it has valid consent before sending messages or making calls using an automatically generated and/or pre-recorded voice.

44. Accordingly, Defendants placed a high volume of calls to cellular phones without valid consent of the called party.

45. Furthermore, Defendants lack policies in place to assure it has valid consent or a pre-existing business relationship with a called party before making telemarketing calls.

46. Defendants also lack policies in place to assure that numbers that receive telemarketing calls were not registered on the Do Not Call Registry.

47. Accordingly, Defendants placed a high volume of calls to numbers listed on the Do Not Call Registry without consent or an existing business relationship.

48. Plaintiff seeks to represent the following classes:

> **227(b) Class:** All persons in the United States to whose cellular telephone numbers Benefytt called on behalf of NCE using

prerecorded or artificial voice which was not made with the person's prior express consent from four years prior to the date of the filing of the original lawsuit to the date of class certification.

**227(c) Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) subscribe to cellular telephones; (2) received more than one telephone call or text message from Benefytt on behalf of NCE on that phone during a 12-month period; and (3) whose phone numbers were listed on the Do Not Call Registry for more than 31 days at the time the calls were received where there was not valid express written consent for those calls.

49. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

50. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendants' actions. The names and phone numbers of the numbers of the proposed class are readily identifiable through records available to Defendants.

51. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

52. Upon information and belief, Defendants have called and continue to call individuals who are registered on the National Do Not Call Registry. It is reasonable to expect that Defendants will continue to make such calls absent this lawsuit.

53. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to, whether Defendants called phone numbers that were registered on the Do Not Call Registry and whether such calls violate the TCPA.

54. Plaintiff's claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

55. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class he seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law. Plaintiff's counsel has the resources to litigate this class action, and Plaintiff and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Plaintiff reserves the right to join other unnamed class members into this lawsuit.

56. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

57. In contrast to numerous individual claims, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

58. Questions of law and fact, particularly the propriety of calling cell phone numbers registered on the National Do Not Call Registry, predominate over questions affecting only individual members.

59. Defendants have acted or refused to act in accordance with the relief sought by these classes, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
### DEFENDANTS VIOLATED THE TCPA 47 U.S.C. §227(b)

60. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

61. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

62. Upon information and belief, Defendant Benefytt initiated multiple calls to the telephone numbers of Plaintiff and the putative class members using an automatically generated or prerecorded voice on behalf of NCE.

63. Benefytt's calls on behalf of NCE to Plaintiff and the putative class members were not made for "emergency purposes."

64. Benefytt's calls on behalf of NCE to Plaintiff and the putative class members were without Plaintiff's prior express consent.

65. Upon information and belief, Defendants placed prerecorded voice calls to hundreds if not thousands of telephone numbers.

66. Defendants contacted Plaintiff and the putative class members despite the fact that their telephone numbers were on the Do Not Call Registry.

67. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights or the rights of the putative class members under the law and with the purpose of harassing Plaintiff and Class members.

68. As a result of the above violations of the TCPA, Plaintiff and the putative class members have suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

WHEREFORE Plaintiff Jonathan Avery, individually and on behalf of all others similarly situated, request the Court grant the following relief:

a. Enter an order against Defendants, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Avery as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel;

c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Defendants willfully violated section 227(b) of the TCPA;

d. Enter judgment in favor of Plaintiff and the class members enjoining Defendants from placing calls or leaving messages utilizing an automatically generated or pre-recorded voice;

e. Award Plaintiff and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration;

f. Award Plaintiff and the class members all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees; and

g. Award Plaintiff and the class members such further and other relief the Court deems just and appropriate.

## COUNT II
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. §227(c)(5)

69. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

70. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their cell phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

71. The penalty for each call placed in violation of the TCPA's restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

72. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to cell phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

73. Where Benefytt placed calls on behalf of NCE to the telephones of Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including but not limited to, 47 U.S.C. § 227(c)(5) and the TCPA's corresponding regulations.

74. Defendants knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

75. Defendants did not obtain valid express written consent from the called parties.

76. Plaintiff and putative class members are entitled to damages of $500.00 per violation for each call and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

WHEREFORE Plaintiff Jonathan Avery, individually and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendants, pursuant to Federal Rule of Civil Procedure 23 *et seq*., certifying this action as a class action and appointing Plaintiff as the class representatives;

b. Enter an order appointing Kimmel & Silverman as counsel for the class;

c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Defendants willfully violated section 227(c)(5) of the TCPA;

d. Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendants from violating the TCPA's regulations prohibiting Defendants from calling numbers registered on the National Do Not Call Registry;

e. Award Plaintiff and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration; and

f. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

### **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, JONATHAN AVERY, and all others similarly situated demand a jury trial in this case.

Respectfully submitted,

Dated: June 3, 2022

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com